## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 7 |
| BAYOU STEEL BD HOLDINGS, LLC, *et al.* | Case No: 19-12153 (KBO) |
| *Debtors*. | (Jointly Administered) |

-------------------------------------------------------------

GEORGE MILLER, in his capacity as Chapter 7
Trustee of Bayou Steel BD Holdings, LLC, *et al*.

Adversary Proceeding No. 21-50222

*Plaintiff*,

vs.

RELIANT RECYCLING, INC.,

*Defendant*.

## MEMORANDUM OF LAW IN SUPPORT OF
## RELIANT RECYCLING, INC.'S
## <u>MOTION TO VACATE DEFAULT JUDGMENT [DOCKET #7]</u>

Filed on: June 8, 2021.

_____

**The Law Office of James Tobia, LLC**
James Tobia, Esquire
1716 Wawaset Street
Wilmington, DE 19806
Tel. (302) 655-5303
Fax (302) 656-8053
Email: jtobia@tobialaw.com

**Jones & Associates**
Roland Gary Jones, Esq.
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Tel. (347) 862-9254
Fax (212) 202-4416
Email: rgj@rolandjones.com

## **TABLE OF CONTENTS**

| Section | Page No. |
|---|---|
| INTRODUCTION | 1 |
| PROCEDURAL BACKGROUND | 2 |
| FACTUAL BACKGROUND | 2 |
| I. THE BUSINESS RELATIONSHIP BETWEEN THE DEBTORS AND THE DEFENDANT | 2 |
| II. EVENTS LEADING TO THE DEFAULT JUDGMENT | 4 |
| SUMMARY OF RELIEF REQUESTED | 5 |
| ARGUMENTS IN FAVOR OF VACATING THE DEFAULT | 6 |
| I. APPLICABLE LAW | 6 |
| II. THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE DEFAULT JUDGMENT IS VACATED | 8 |
| III. THE DEFENDANT HAS MERITORIOUS DEFENSES | 9 |
| A.  THE TRANSFERS WERE MADE IN THE ORDINARY COURSE OF BUSINESS OR FINANCIAL AFFAIRS OF THE DEBTORS AND THE DEFENDANT. HENCE, THE TRANSFERS ARE EXEMPT FROM AVOIDANCE PURSUANT TO SECTION 547(C)(2) OF THE BANKRUPTCY CODE | 10 |
| IV. THE DEFENDANT'S FAILURE TO RESPOND TO THE COMPLAINT WAS DUE TO EXCUSABLE NEGLECT AND WAS NOT WILLFUL | 17 |
| V. EQUITY CONSIDERATIONS FAVOR THE DEFENDANT | 19 |
| CONCLUSION | 19 |

## TABLE OF AUTHORITIES

### I.    APPLICABLE LAW

**Statute**:
Federal Rule of Civil Procedure

**Cases**:
- *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202 (7th Cir. 1984)
- *Church-El v. Bank of N.Y.*, Civil No. 11-877 (D. Del., 2013)
- *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2nd Cir. 1993)
- *Gold Kist, Inc. v. Laurinburg Oil Co*., 756 F.2d 14, 19 (3d Cir. 1985)
- *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)
- *United States v. $55,518.55 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984).

### II.    THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE DEFAULT JUDGMENT IS VACATED

Cases:
- *In re Cendant Corp. PRIDES Litig*., 235 F.3d 176, 183 (3d Cir. 2000)
- *JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli)*, 2012 U.S. Dist. LEXIS 19223, 6-8 (D.N.J. Feb. 14, 2012
- *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011)
- *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013)

### III.    THE DEFENDANT HAS MERITORIOUS DEFENSES

Cases:
- *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. at 45 (E.D.N.Y. 2002)
- *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995)
- *Colangelo v. Eisen (In re Colangelo)*, 2009 U.S. Dist. LEXIS 30440 (E.D. Mich. Mar. 31, 2009)
- *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2nd Cir. 1993)
- *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48 (E.D.N.Y. 2007)
- *SEC V. McNulty*, 137 F.3d at 740 (2d. Cir. 1998)
- *Weisel v. Pischel*, 197 F.R.D. at 239 (E.D.NY. 2000)
- *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003)

### A.    THE TRANSFERS WERE MADE IN THE ORDINARY COURSE OF BUSINESS OR FINANCIAL AFFAIRS OF THE DEBTORS AND THE DEFENDANT. HENCE, THE TRANSFERS ARE EXEMPT FROM AVOIDANCE PURSUANT TO SECTION 547(C)(2) OF THE BANKRUPTCY CODE

Cases:

- *AE Liquidation*, 2013 Bankr. LEXIS 4144, 2013 WL 5488476
- *Berger Indus. v. Artmark Prods. Corp. (In re Berger Indus.),* 260 B.R. 639, 645 (Bankr. E.D.N.Y. 2001)
- *Brothers Gourmet Coffees v. Armenia Coffee Corporation (In re Brothers Gourmet Coffees, Inc.)*, 271 B.R. 456 (Bankr. Ct. DE 2002)
- *Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234, 241-42 (Bankr. D. Del. 2010)
- *Eggmann v. Millwork Products, LLC (In re: Landreth Lumber Company)*, Case No. 10-cv-282-MJR, 2011 U.S. Dist. LEXIS 30614 (Dist. Ct. S.D.IL, March 23, 2011)
- *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods. Inc.,* 18 F.3d 217, 219 (3rd Cir. 1994)
- *Forman v. Moran Towing Corp. (In re AES Thames, LLC)*, 547 B.R. 99 (Bankr. D. Del. 2016).
- *Harrison v. The Ink Spot (In re Rave Comms. Inc.),* 128 B.R. 369 (Bankr. S.D.N.Y. 1991).
- *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Del., Inc.),* 320 B.R. 541, 548-49 (Bankr. D. Del. 2004)
- *Huffman v. New Jersey Steel Corp., (In re Valley Steel Corp),* 182 B.R. 728 (Bankr. W.D. Va. 1995)
- *In re Bank of New England Corp.*, 161 B.R. 557 (Bankr. D. Mass. 1993)
- *In re Lan Yik Foods Corp.,* 185 B.R. 103, *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 373 (1977)
- *J.P. Fyfe, Inc. v. Bradco Supply Corp. (In re J.P.Fyfe, Inc.),* 96 B.R. 474,477 (D.N.J. 1988), aff'd 891 F.2d 66 (3rd Cir. 1989)
- *Jensen v.Raymond Building Supply Co. (In re Homes of Port Charlotte)*, 109 B.R. 489 (Bankr. Ct. M.D.FL, 1990)
- *Kleven v. Househould Bank,* 334. F.3d 638, 642 (7th Cir. 2003), cert denied, 540 U.S. 1073 (2003)
- *McCord v. Venus Foods (In re Lan Yik Foods Corp.)*, 185 B.R. 103, 112-113 (Bankr. E.D.N.Y. 1995)
- *Menotte v. Oxyde Chemicals, Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573 (Bankr. S.D. Fla. 2010)
- *Modern Metal Prods. Co. v. Virtual Eng'g Inc. (In re Modern Metal Prods. Co.)* 2015 Bankr. LEXIS 1188 (Bankr. N.D. Ill. Apr. 8, 2015)
- *Paloain v. Quad-Tech, Inc. (In re GGSI Liquidation, Inc.)*, 313 B.R. 770, 775 (Bankr. N.D. Ill. 2004)
- *SEC v. First Jersey Sec., Inc. (In re First Jersey Sec. Inc.)*, 180 F.3d 504, 512 (3d Cir. 1999)
- *Smith v. Shearman & Sterling (In re BCE West, L.P.)*, 2008 Bankr. LEXIS 569 (Bankr. D. Ariz. Feb. 28, 2008)
- *Torch Offshore, LLC v. C&D Marine, LLC (In re Torch Offshore, Inc.),* Adv. Proc. No. 07-1001, 2008 Bankr. LEXIS 1898 (Bankr. Ct. E.D.LA, June 18, 2008)
- *Waslow v. Interpublic Group of Cos., Inc. (In re M Group, Inc.)*, 308 B.R. 697, 702 (Bankr. D. Del. 2004)

## IV.   THE DEFENDANTS' FAILURE TO RESPOND TO THE COMPLAINT WASDUE TO EXCUSABLE NEGLECT AND WAS NOT WILFULL

Cases:

- *Albicocco v. Albicoco, et al. (In re Albicocco),* 2006 U.S. Dist. LEXIS 65359 (E.D.N.Y. September 13, 2006)
- *In re XO Communs., Inc.,* 301 B.R. 782 (Bankr. S.D.N.Y. 2003)
- *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)
- *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007)
- *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987)
- *Zazzali v. 1031 Exch. Group LLC (In re DBSI Inc.)*, 501 B.R. 37, 42 (Bankr. D. Del. 2013)

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 7 |
| BAYOU STEEL BD HOLDINGS, LLC, *et al.* | Case No: 19-12153 (KBO) |
| *Debtors*. | (Jointly Administered) |

------------------------------------------------------------
GEORGE MILLER, in his capacity as Chapter 7
Trustee of Bayou Steel BD Holdings, LLC, *et al*.

                                    Adversary Proceeding No. 21-50222

                    *Plaintiff*,

        vs.

RELIANT RECYCLING, INC.,

                    *Defendant*.


**MEMORANDUM OF LAW IN SUPPORT OF**
**RELIANT RECYCLING, INC.'S**
**MOTION TO VACATE DEFAULT JUDGMENT [DOCKET #7]**

        Reliant Recycling, Inc. (the "Defendant"), by and through the undersigned counsel, submits this Memorandum of Law in support of its Motion to Vacate Entry of Default Judgment (the "Motion") entered against it on April 28, 2021; the Affidavit of Defendant's corporate representative, Jake Himel (the "Himel Affi."), and the exhibits attached thereto.

**INTRODUCTION**

        1.        The Defendant has meritorious defenses against the claims of George Miller (the "Plaintiff"), the chapter 7 trustee of the debtors Bayou Steel BD Holdings, LLC, *et al.* (the "Debtors"). Once advised that a default judgment had been entered against it, the Defendant quickly sought for and retained undersigned counsel Roland Gary Jones. Upon retention, Mr. Jones immediately started working towards reviewing the case and filed this Motion.

1

## PROCEDURAL BACKGROUND

2.      On October 1, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' cases are jointly administered for administrative purposes only.

3.      On March 4, 2021, the Plaintiff commenced the above-captioned Adversary Proceeding by filing a Complaint against the Defendant. In the Complaint, the Plaintiff sought to recover the amount of $359,567.97 (the "Transfers") from the Defendant as alleged preference transfers under 11 U.S.C. §547 and §550. [Docket #1]

4.      On April 27, 2021, the Plaintiff filed a request for entry of default against the Defendant. [Docket #4]

5.      On April 28, 2021, the Clerk entered a default against the Defendant. [Docket #6]

6.      On April 28, 2021, a Default Judgment was entered against the Defendant. (the "Default Judgment"). [Docket #7]

7.      On May 13, 2021, the above-captioned Adversary Proceeding was closed.

8.      The Defendant learned of the default judgment through the undersigned counsel on May 14, 2021.

9.      On May 16, 2021, the Defendant's registered agent received the Notice of Default in the mail.

## FACTUAL BACKGROUND

### I.      THE BUSINESS RELATIONSHIP BETWEEN THE DEBTORS AND THE DEFENDANT

10.     Upon information and knowledge, prior to filing for bankruptcy relief, the Debtors owned and operated a steel mini-mill, stocking locations, and a rolling mill and produced structural

steel products.

11.     The Defendant's principal place of business is at 305 Dickson Road, Houma, Louisiana 70363. *See Himel Affi. ¶3.*

12.     The Defendant is a company engaged in the sale of scrap metal to recycling plants. *See Himel Affi. ¶4.*

13.     The Debtors and the Defendant (collectively, the "Parties") first started doing business in or about December 2018. *See Himel Affi. ¶5.*

14.     The Defendant sold and delivered mixed scrap metals to the Debtors. *See Himel Affi. ¶6.*

15.     There was no written agreement between the Parties. The business between the parties was typically conducted by way of purchase orders and invoices. The Parties first agreed upon the price of the scrap metals per ton at the start of a particular month. The Debtors then confirmed the order by issuing a purchase order to the Defendant. Thereafter, pursuant to the purchase orders, the Defendant delivered the scrap metal to the Debtors. *See Himel Affi. ¶7.*

16.     The scrap was delivered to the Debtors' recycling plant by the Defendant's trucks. Multiple truck deliveries were usually required to fulfill a single purchase order. *See Himel Affi. ¶8.*

17.     Each truck delivery was accompanied by an invoice. These invoices did not state any payment terms. However, the Debtors' representatives agreed to pay each invoice as soon as possible. The Debtors typically paid within a week or two upon delivery, however, it was not unusual for certain payments to be made in a longer time frame. *See Himel Affi. ¶9.*

**Historical Period Payments**

3

18.    During the Historical Period[1], the Debtors paid the Defendant between 0 days to 35 days of the invoice date. The average lateness of the Debtors' payment per invoice was 2.21 days. *See Himel Affi. ¶10; see also Historical Period Payments Table at Exhibit "A."*

**Preference Period Payments**

19.    During the Preference Period[2], the Debtors paid the Defendant between 0 days to 9 days of the invoice date. The average lateness of the Debtors' payment per invoice was 2.50 days. *See Himel Affi. ¶11; see also Preference Period Payments Table at Exhibit "B."*

### EVENTS LEADING TO THE DEFAULT JUDGMENT

20.    On March 4, 2021, the Plaintiff served the summons and the copy of the complaint to the Defendant's address, P.O. Box 909, Houma, Louisiana 70361, to the attention of Derry Himel, Defendant's Vice-President. Additionally, the Plaintiff also served a copy of the Complaint and the summons to Defendant's registered agent Gerald Arceneaux at the address 117 Hotard Street, Suite 1A, Bourg, Louisiana 70343. [Docket #2]

21.    The Defendant's representative, Mr. Himel, cannot recall when he received process, however, he checks the Defendant's P.O. Box at least once a week. *See Himel Affi. ¶13*

22.    Upon receiving process, Mr. Himel forwarded the documents to Mr. Arceneaux. *See Himel Affi. ¶14*

23.    Mr. Arceneaux, while he is the Defendant's registered agent and is a lawyer, is not in-house counsel to the Defendant. *See Himel Affi. ¶15*

24.    Since Mr. Arceneaux was not retained to represent the Defendant, and because of an unintentional lag in communication between Mr. Himel and Mr. Arceneaux, the Defendant was

---

[1] The 2 years prior to the 90 days before the filing of the bankruptcy petition by the Debtors i.e., the period starting July 3, 2017, until July 3, 2019.
[2] The 90 days prior to the Petition Date i.e., the period starting July 4, 2019, until October 1, 2019.

unable to respond to the Complaint. *See Himel Affi.* ¶16

25.    On April 27, 2021, the Plaintiff requested for an entry of a default judgment against the Defendant. [Docket #4]

26.    On April 28, 2021, a default was entered against the Defendant. [Docket #7]

27.    On information and belief, on May 12, 2021, Mr. Arceneaux received the notice of the Plaintiff's request for entry of a default judgment against the Defendant. The delay was caused by the fact that mail to Bourg, Louisiana, is typically collected at New Orleans. It usually takes about two weeks for the mail to be delivered to Bourg, Louisiana. Upon receipt of the notice, Mr. Arceneaux informed the Defendant about the Plaintiff's request for an entry of a default judgment against the Defendant and about the need to retain competent counsel. *See Himel Affi.* ¶17.

28.    Upon learning of the Plaintiff's request for entry of a default judgment against the Defendant, the Defendant immediately started looking for competent counsel. *See Himel Affi.* ¶18.

29.    On information and belief, Mr. Arceneaux received a copy of the default judgment on or about May 16, 2021. *See Himel Affi.* ¶19.

30.    On May 17, 2021, the Defendant retained the undersigned counsel and his firm to handle this matter. *See Himel Affi.* ¶20.

## SUMMARY OF RELIEF REQUESTED

31.    The Defendant requests that this Honorable Court vacate the Default Judgment against it.

32.    The Defendant had no intent to ignore the complaint filed by the Plaintiff and fully intended to retain counsel in order to answer the complaint. When the Defendant was advised of the Default Judgment on May 14, 2021, he immediately retained undersigned counsel, Roland Gary Jones. Upon retention, Mr. Jones immediately started reviewing the case and working

towards the filing of this Motion.

33.     Any lapse in time in the Defendant's filing of this Motion to Vacate the Default Judgment was caused by a delay in the Defendant receiving advice from Defendant's former counsel, Mr. Arceneaux and for the reason that the Defendant had to search for an out of state counsel.

34.     Additionally, the Plaintiff will suffer no prejudice if the Default Judgment is vacated. A mere little over one month has passed between the entry of the Default Judgment and the filing of this Motion. There is no danger that any evidence may be lost. A less than two months of delay in filing a motion to vacate a default judgment is legally insignificant. *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501 B.R. 37 (Bankr. Ct. D. Del. 2013).

35.     Finally, the Defendant also has meritorious defenses in its favor.

## ARGUMENTS IN FAVOR OF VACATING THE DEFAULT

### I.     APPLICABLE LAW

36.     Fed. R. Civ. P. 60(b) provides that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    1)     mistake, inadvertence, surprise, or excusable neglect;

    2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    4)     the judgment is void;

5)      the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable; or

6)      any other reason that justifies relief.

37.      Fed. R. Civ. P. 60(c) subsequently provides that a party may move to vacate a default due to mistake, inadvertence, surprise, or excusable neglect within a year of the default.

38.      Fed. R. Civ. P. 60(b)(1) permits courts to reopen judgments for reasons of mistake, inadvertence, surprise, or excusable neglect, but only on motion made within one year of the judgment. Fed. R. Civ. P. 60(b)(6) goes further, however, and empowers the court to reopen a judgment even after one year has passed for any other reason justifying relief from the operation of the judgment. *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

39.      Generally, entries of default and default judgments are disfavored by the courts, and when a defendant moves to set aside the entry of default or a default judgment the law, therefore "require[s] doubtful cases to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Church-El v. Bank of N.Y.*, Civil No. 11-877 (D. Del., 2013) citing *United States v. $55,518.55 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984).

40.      Defaults are particularly disfavored when substantial rights are implicated, or when substantial sums of money are demanded. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2nd Cir. 1993).

41.      A default judgment is a "weapon of last resort, appropriate only when a party willfully disregards pending litigation." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202 (7th Cir. 1984).

42.     When considering an application to set aside a default, or a default judgment, a court "must consider the following three facts: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

## II.     THE PLAINTIFF WILL SUFFER NO PREJUDICE IF THE DEFAULT JUDGMENT IS VACATED

43.     Prejudice, in the context of a motion to vacate a default judgment, is "the loss of evidence, increased potential for fraud or collusion, or a substantial reliance upon the judgment." *JPMorgan Chase Bank, N.A. v. Pandolfelli (In re Pandolfelli)*, 2012 U.S. Dist. LEXIS 19223, 6-8 (D.N.J. Feb. 14, 2012); *see also* *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011). The cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment. The loss of an advantageous position cannot be used to establish prejudice. *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011).

44.     The burden of proving prejudice is on the Plaintiff. *Smith v. PAC Int'l Logistics Co. (In re Advanced Mktg. Servs.)*, 448 B.R. 321, 327-330 (Bankr. D. Del. 2011) ("Here, the Plaintiff has not shown that he would be materially prejudiced if the default judgment is vacated.").

45.     A mere little over one month has passed between the entry of the Default Judgment and the filing of this Motion. There is no danger that any evidence may be lost.

46.     About less than a two-month delay in filing a motion to vacate is legally insignificant as a matter of law. *See*, *Zazzali v. 1031 Exchange Group LLC et al. (In re DBSI),* 501

B.R. 37 (Bankr. Ct. D. Del. 2013) citing *In re Cendant Corp. PRIDES Litig*., 235 F.3d 176, 183 (3d Cir. 2000) (the "delay in bringing the Rule 60(b) motion was three weeks … [t]his delay was trivial in light of the one-year outer limit for bringing a Rule 60(b) motion . . . and under O'Brien, in which we concluded that a two-month delay was insignificant as a matter of law"),

### III.    THE DEFENDANT HAS MERITORIOUS DEFENSES

47.    One of the requirements for setting aside a default is that the moving party must have a meritorious defense. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, . . . but must present evidence of facts that, 'if proven at trial, would constitute a complete defense."' *SEC V. McNulty*, 137 F.3d at 740 (2d. Cir. 1998) (quoting Enron Oil, 10 F.3d at 98) (internal citation omitted); see also *Weisel v. Pischel*, 197 F.R.D. at 239 (E.D.NY. 2000) ("Likelihood of success is not the measure. [Plaintiffs'] allegations are meritorious if they contain ***'even a hint of a suggestion'*** which, if proven at trial, would constitute a complete defense") (citations omitted) (alteration in original); *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 855 (E.D.N.Y. 1995) ("A party's defense may be meritorious if the defense raises a significant issue; a party need not establish the merits of the defense conclusively.") (citation omitted). Although more than mere "conclusory denials" is required to establish a meritorious defense, *Enron Oil*, 10 F.3d at 98, as long as the defense is "potentially viable," it will be adequate to warrant setting aside the entry of default. *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. at 45 (E.D.N.Y. 2002) (denying plaintiffs motion for a default judgment in part due to the defendant's "potentially viable" defense) (citation omitted)" *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48 (E.D.N.Y. 2007).

48.    Ambiguous or disputed facts must be construed in the light most favorable to the defaulted party when testing the meritoriousness of a proposed defense. *Colangelo v. Eisen (In re*

*Colangelo)*, 2009 U.S. Dist. LEXIS 30440 (E.D. Mich. Mar. 31, 2009) citing *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003).

49.     If the Defendant is given an opportunity to present an Answer, the Defendant could prevail against the Plaintiff's claim based on the defenses detailed below.

**A.     THE TRANSFERS WERE MADE IN THE ORDINARY COURSE OF BUSINESS OR FINANCIAL AFFAIRS OF THE DEBTORS AND THE DEFENDANT. HENCE, THE TRANSFERS ARE EXEMPT FROM AVOIDANCE PURSUANT TO SECTION 547(C)(2) OF THE BANKRUPTCY CODE**

50.     Section 547(c)(2) of the Bankruptcy Code provides that the Trustee may not avoid a transfer under subsection Section 547(b) to the extent such transfer was: (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms.

51.     The policy behind this exception is "to leave undisturbed normal financial relations because it does not detract from the general policy of the preference section to discourage unusual transactions by either the debtor or his creditors during the debtor's slide into bankruptcy." *In re Lan Yik Foods Corp.,* 185 B.R. 103, *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); *see also* Berger Indus. v. Artmark Prods. Corp. (In re Berger Indus.), 260 B.R. 639, 645 (Bankr. E.D.N.Y. 2001); *Harrison v. The Ink Spot (In re Rave Comms. Inc.),* 128 B.R. 369 (Bankr. S.D.N.Y. 1991). In this way, Congress has "induced creditors to continue dealing with a distressed debtor so as to kindle its chances of survival without a costly detour- through, or a humbling ending in, the sticky web of bankruptcy." *In re Lan Yik Foods Corp.,* Id., quoting *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods. Inc.,* 18 F.3d 217, 219 (3rd Cir. 1994). Absent this exception, creditors might cease ordinary trade with any customer who appeared to be experiencing financial difficulty, thus hastening its slide into bankruptcy. *See J.P.*

*Fyfe, Inc. v. Bradco Supply Corp. (In re J.P.Fyfe, Inc.),* 96 B.R. 474,477 (D.N.J. 1988), aff'd 891 F.2d 66 (3rd Cir. 1989); *Paloain v. Quad-Tech, Inc. (In re GGSI Liquidation, Inc.)*, 313 B.R. 770, 775 (Bankr. N.D. Ill. 2004) (the purpose of the "ordinary course" defense is to protect recurring and customary credit transactions that were not preferential precisely because they occurred during the ordinary course of business), citing *Kleven v. Household Bank,* 334. F.3d 638, 642 (7th Cir. 2003), cert denied, 540 U.S. 1073 (2003).

52.       To make out an ordinary course of business defense under 11 U.S.C.S. § 547(c)(2), a defendant must show that the incurred debts, and the resulting transfers in payment of those debts, were made either in the ordinary course of business or according to ordinary business terms. 11 U.S.C.S. § 547(c)(2). Section 547(c)(2)(A) requires a subjective examination of whether a transfer was ordinary between the parties to the transfer, meaning whether the payments were consistent with the course of dealings between the parties. The determination of whether a creditor has met its burden under section 547(c)(2)(A) is a subjective test involving the consistency of transactions between the creditor and the debtor before and during the preference period." *AE Liquidation*, 2013 Bankr. LEXIS 4144, 2013 WL 5488476 at *3 citing *SEC v. First Jersey Sec., Inc. (In re First Jersey Sec. Inc.)*, 180 F.3d 504, 512 (3d Cir. 1999). When reviewing the transactions for consistency, a court should consider several factors: (i) The length of time the parties engaged in the type of dealing at issue; (ii) Whether the subject transfers were in an amount more than usually paid; (iii) Whether the payments at issue were tendered in a manner different from previous payments; (iv) Whether there appears to be an unusual action by the creditor or debtor to collect on or pay the debt; and (v) Whether the creditor did anything to gain an advantage (such as obtain additional security) in light of the debtor's deteriorating financial condition. *AE Liquidation*, 2013 Bankr. LEXIS 4144, 2013 WL 5488476, *3 citing *Burtch v. Detroit Forming,*

*Inc. (In re Archway Cookies)*, 435 B.R. 234, 241-42 (Bankr. D. Del. 2010); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Del., Inc.),* 320 B.R. 541, 548-49 (Bankr. D. Del. 2004); *Forman v. Moran Towing Corp. (In re AES Thames, LLC)*, 547 B.R. 99 (Bankr. D. Del. 2016).

### Prior Course of Dealing Between the Parties – Consistency of transactions between the Debtors and Defendant before and during the Preference Period

53.      A look at various factors to determine the consistency of transactions between the Defendant and the Debtors reveals that there was nothing unusual in their transactions during the Preference Period when compared with those transactions during the Historical Period.

### Length of time the parties have engaged in the type of dealing at issue.

54.      The Defendant provided the Debtors with scrap metals for about 2 years prior to the Petition Date. The products that the Defendant provided to the Debtors were within the scope of Defendant's normal business operations just as the Debtors' acceptance was in the ordinary course of the Debtors' business operations. It is beyond question that the Preference Transfers were a by-product of the routine and normal course of transactions between the Debtors and the Defendant.

### The payments were tendered in a manner not different from previous payments.

55.      During the Historical Period, the Debtors habitually paid for Defendant's invoices via Wire or Check payment. The Debtors continued paying in this manner during the Preference Period.

### The Defendant did not exert any collection pressure on the Debtors and did nothing to gain an advantage of the Debtors' deteriorating financial condition.

56.     In the course of its business relationship with the Debtors, up to and during the Preference Period, the Defendant did not do anything unusual to take advantage of the Debtors' deteriorating financial condition. During the Historical Period, the Defendant would typically follow up with the Debtors for any outstanding payments on its invoices via electronic mail or telephone. This practice continued during the Preference Period.

**Timing of payments**

57.     To prove ordinariness, it is incumbent upon preference action defendants to show "some similarity in the account aging history in the preference period and that in the pre-preference period." *Waslow v. Interpublic Group of Cos., Inc. (In re M Group, Inc.)*, 308 B.R. 697, 702 (Bankr. D. Del. 2004).

**Consistency in the Debtors' Payment Practices**
**- the "overall average lateness" method**

58.     The Defendant will establish a "baseline of dealings" to compare payment practices during the Preference Period with the prior course of dealing. The starting point involves consideration of the average time of payment after the issuance of the invoice during the Historical Period.

59.     As noted earlier, during the Historical Period, the Debtors typically paid the Defendant's invoices within 2.21 days of the invoice date on average. *See Exhibit "A" to Himel Affi.* Similarly, during the Preference Period, the Debtors paid all of the Defendant's invoices within 2.50 days of the invoice date on an average. *See Exhibit "B" to Himel Affi.*

60.     A difference of less than 1 day in the overall averages between the Historical and Preference Period payment averages falls well within what a number of courts have found as ordinary and immune from a trustee or debtor-in-possession's avoidance powers:

a. *In re Bank of New England Corp.*, 161 B.R. 557 (Bankr. D. Mass. 1993) - Holding that a difference between 38.4 days pre-preference average number of days to payment, and 54.7 days preference average number of days to payment did not make the payments out of the ordinary course of business.

b. *McCord v. Venus Foods (In re Lan Yik Foods Corp.)*, 185 B.R. 103, 112-113 (Bankr. E.D.N.Y. 1995) – Holding that a difference between approximately 89 days pre-preference average days to pay after invoicing, and approximately 110 days preference average days to pay after invoice did not make the payments out of the ordinary course of business; Although the average payment in the preference period was made later than the average payment during the pre-preference period, a comparison of the pre-preference and preference payments shows that in both periods there were substantial and significant delays in payments.

c. *Huffman v. New Jersey Steel Corp., (In re Valley Steel Corp)*, 182 B.R. 728 (Bankr. W.D. Va. 1995) - Holding that a difference between approximately 54 days pre-preference average days to payment, and approximately 67 days preference average days   to payment did not make the payments out of the ordinary course of business;

d. *Smith v. Shearman & Sterling (In re BCE West, L.P.)*, 2008 Bankr. LEXIS 569 (Bankr. D. Ariz. Feb. 28, 2008) - Holding that a difference between 69 days pre-preference average number of days to payment, and 61 days preference average number of days to payment did not make the payments out of the ordinary course of business.

61.     Hence, if the timeliness of payments is determined solely based on a comparison of average days before and during the Preference Period, the difference in this adversary proceeding is not so significant as to defeat the ordinariness of the alleged Transfers. The evidence, in this case, reflects a time rate consistent with the above-cited case laws which indicate that a narrow band of difference is acceptable.

**Consistency in the Debtors' Payment Practices
- the "distribution or bucketing" method**

62.     Most of the Historical Period payments (97.29%) were made under 30-days of the relevant invoices. Similarly, all of the Preference Transfers (100%) were made under 30-days of the relevant invoices.

**Consistency in the Debtors' Payment Practices**

14

**- the "range of payments" method**

63. Payments in the preference period made within the range of payments of the pre-preference period are deemed payments in the ordinary course of business. *Brothers Gourmet Coffees v. Armenia Coffee Corporation (In re Brothers Gourmet Coffees, Inc.)*, 271 B.R. 456 (Bankr. Ct. DE 2002); *Jensen v. Raymond Building Supply Co. (In re Homes of Port Charlotte)*, 109 B.R. 489 (Bankr. Ct. M.D.FL, 1990) (determining that only those preference payments beyond the pre-preference range of 28-76 days were outside the ordinary course); *Torch Offshore, LLC v. C&D Marine, LLC (In re Torch Offshore, Inc.),* Adv. Proc. No. 07-1001, 2008 Bankr. LEXIS 1898 (Bankr. Ct. E.D.LA, June 18, 2008) (determining that preference payments to one of two creditors could not be avoided by the trustee because the preference period payment range of 65 to 168 days was similar to 36 and 128 days pre-preference period payment range).

64. For example, in the case of *Eggmann v. Millwork Products, LLC (In re: Landreth Lumber Company)*, Case No. 10-cv-282-MJR, 2011 U.S. Dist. LEXIS 30614 (Dist. Ct. S.D.IL, March 23, 2011) the trustee and the creditor utilized different methodologies in analyzing the ordinary course of business defense. *Id*. at 3. The trustee utilized an average days analysis, while the creditor resorted to a range of payments analysis. *Id*. at 4. The District Court chose to use the range of payments method because the trustee's use of averages created a "far too narrow payment window, which would distort the relationship, understanding, and practice between" the debtor and the creditor. *Id*. at 18. The Court, which found the debtor's preference period payments to the creditor were being made in the range of its pre-preference period payments, upheld the creditor's ordinary course of business defense. *Id*. at 19.

65. Similarly, in *Menotte v. Oxyde Chemicals, Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573 (Bankr. S.D. Fla. 2010), the trustee and the creditor once again differed in the method to use

in calculating the timeliness of the debtor's payment. *Id.* at 13. The creditor presented evidence to show that the preference payment was 29 days late, which was within the 0 to 33 day range of the debtor's pre-preference period payments. *Id.* at 16. While the bankruptcy court ultimately ruled that the preference transfer was made outside of the ordinary course due to unusual collection activity on the part of the creditor, it did hold that the transfer would have otherwise been deemed ordinary since it was made within the pre-preference period payment range. *Id.* at 17.

66.    The Court in *Modern Metal Prods. Co. v. Virtual Eng'g Inc. (In re Modern Metal Prods. Co.)* 2015 Bankr. LEXIS 1188 (Bankr. N.D. Ill. Apr. 8, 2015) held that the alleged preferential transfers, which were later than average, were protected from avoidance because they fell well within the historical baseline range of payments.

67.    Although there is no single formula the Court must use, most courts tend to use the range of terms that define the transaction, rather than considering only averages. *Menotte v. Oxyde Chemicals, Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573 (Bankr. S.D. Fla. 2010). When comparing pre-preference period transactions to preference period transactions, the Court may look at ranges and/or averages. *Eggmann v. Millwork Products, LLC (In re: Landreth Lumber Company)*, Case No. 10-cv-282-MJR, 2011 U.S. Dist. LEXIS 30614 (Dist. Ct. S.D.IL, March 23, 2011). Ranges are the most commonly used tool because averages can be misleading and result in an inaccurate depiction of the actual ordinary course of business. *Id.*

68.    Using the range of payments test, in the present case, the Preference Period shows payments ranging from 0 to 9 days late from the invoice date (*see Himel Affi. ¶11; Exhibit "B"*). Meanwhile, during  the Historical Period, the payments made by the Debtors to the Defendant ranged from 0 to 35 days from the invoice date (*see Himel Affi. ¶10; Exhibit "A"*). The outside range of the Preference Period payments were thus made in line with, or well within the outside

16

limits of, the Historical Period payments. The results of the "range of payments" test showed Debtors' payments during the Preference Period to be ordinary.

69.     Consequently, the Preference Transfers, having been made within the range of payments during the Historical Period, should be protected from the Plaintiff's avoidance power pursuant to Section 547(c)(2)(A) of the Bankruptcy Code because they were made in accordance with the ordinary course of business and financial affairs of the Debtors and the Defendant.

**B. ADDITIONAL DEFENSES**

70.     The Defendant's research is continuing at this point. However, the Defendant is of the opinion that it may also be able to assert the following affirmative defenses if it is permitted to file an Answer:

1)     subsequent new value in exchange was extended to the Debtors subsequent to each to the Transfers that were not paid by an otherwise unavoidable transfer; or in the alternative, that the Transfers were contemporaneous to the new value extended to the Debtors.

2)     the Transfers were made in accordance with the ordinary industry terms.

**IV.     THE DEFENDANT'S FAILURE TO RESPOND TO THE COMPLAINT WAS DUE TO EXCUSABLE NEGLECT AND WAS NOT WILFUL**

71.     In *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) the Supreme Court adopted a two-prong test for determining whether time should be extended based on excusable neglect. *See also Albicocco v. Albicoco, et al. (In re Albicocco),* 2006 U.S. Dist. LEXIS 65359 (E.D.N.Y. September 13, 2006) (recognizing the fact that *Pioneer* liberalized the excusable neglect standard). First, the delay in filing must be due to neglect. *Id.* Second, the neglect must be excusable. *Id.*

72.     The determination as to what sorts of neglect will be considered "excusable" is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. *Pioneer Inv. Servs. Co. v. Brunswick Associates, Ltd.*, *supra*; *In re American Classic Voyages Co.,* 405 F.3d 127, 133 (3d Cir. 2005); *In re XO Communs., Inc.,* 301 B.R. 782 (Bankr. S.D.N.Y. 2003).

73.     The Third Circuit has directed that courts should not favor a default judgment. *Zazzali v. 1031 Exch. Group LLC (In re DBSI Inc.)*, 501 B.R. 37, 42 (Bankr. D. Del. 2013) citing *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987). Where the decision is a close call "doubts should be resolved in favor of setting aside the default and reaching the merits." *Id*.

74.     Excusable neglect is an equitable concept, upon which the totality of the circumstances should be taken into account. *Zazzali v. 1031 Exch. Group LLC (In re DBSI Inc.)*, 501 B.R. 37, 42 (Bankr. D. Del. 2013) citing *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007). Excusable neglect is not "limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer*, 507 U.S. at 391.

75.     The Defendant had no intent to ignore the complaint filed by the Plaintiff and fully intended to retain counsel in order to answer the complaint. The Defendant learned of the Plaintiff's request dated April 27, 2021, for an entry of a default judgment through its registered agent on May 12, 2021.  When the Defendant learned of the Plaintiff's request for a default judgment against the Defendant, the Defendant's representative quickly sought competent counsel and retained undersigned counsel Roland Gary Jones. The Defendant was informed about the entry of the default judgment on May 14, 2021, by the undersigned counsel. On May 17, 2021, upon retention, Mr. Jones immediately started a review of the case and working towards drafting

and filing this Motion.

## V.    EQUITY CONSIDERATIONS FAVOR THE DEFENDANT

76.     In this present case, it would be inequitable to deny the Defendant its day in court.

The default would grant the Debtors' estate a windfall it does not deserve when case law uniformly

states that a trustee in bankruptcy cannot recover money/property if it was transferred in the

ordinary course of business of the parties. Furthermore, vacating the Default Judgment will not

prejudice the Plaintiff's ability to litigate the case.

### <u>CONCLUSION</u>

For the above reasons, the Defendant requests that the Court enter and order similar in

substance to the Proposed Order filed concurrently with the motion: (1) setting aside the Default

Judgment entered against the Defendant; and (2) granting the Defendant thirty (30) days to file an

Answer to the Complaint. The Defendant additionally requests for such other and further relief as

this Court may deem just and proper.

 Dated: June 8, 2021

**The Law Office of James Tobia, LLC**
By: /s/ *James Tobia*
James Tobia, Esquire (I.D. No. 3798)
1716 Wawaset Street
Wilmington, DE 19806
Tel. (302) 655-5303
Fax (302) 656-8053
Email: jtobia@tobialaw.com

and

**JONES & ASSOCIATES**
Roland Gary Jones, Esq.
New York Bar No. RGJ-6902
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Tel. (347) 862-9254
Fax (212) 202-4416

Email: rgj@rolandjones.com
*Pro hac vice motion to be filed.*

*Counsels for the Defendant*